UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHNATHAN KEENAN,

                 Plaintiff,

v.                                        Civil No. 2:20cv78

WILLIAM P. AHERN,

                 Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant William P. Ahern's ("Defendant" or "Ahern") motion to dismiss Plaintiff Johnathan Keenan's ("Plaintiff" or "Keenan") Complaint on the basis of qualified immunity, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. After reviewing the parties' briefs, the Court finds that a hearing on the motion is unnecessary. Therefore, Defendant's associated consent motion seeking a hearing is **DENIED**. ECF No. 10. For the reasons stated below, Defendant's motion to dismiss is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

On April 19, 2017, Ahern, a Virginia Beach police officer, was on patrol when he spotted a vehicle in a parking lot "match[ing] the description of a vehicle that had been reported to

---

[1] The facts recited here come from the Complaint and are assumed true only to decide the pending motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

the police earlier that evening."[2]   ECF No. 1-1 ¶¶ 3-5.   Keenan was in the passenger seat of the parked vehicle, while an unidentified individual was in the driver's seat with his or her door ajar.   Id. ¶¶ 3, 6-7.   Ahern pulled into the parking lot and exited his patrol vehicle, accompanied by his canine partner.   Id. ¶ 5.   Other Virginia Beach police officers apparently arrived at the scene around the same time, though it is unspecified how many. See id. ¶¶ 7, 10.   Ahern commanded the two occupants to exit the vehicle.   Id. ¶ 7.   The individual in the driver's seat heeded Ahern's command and was taken into custody by another officer. Id.   Keenan, however, remained motionless in the passenger seat of the vehicle.   Id.   Ahern, who could see Keenan through the open driver's door, issued "repeated verbal commands" to Keenan to exit the vehicle, but Keenan "was unconscious and unresponsive."   Id. ¶¶ 8-9.

Despite having no reason to believe that Keenan presented a significant threat of death or serious physical injury to Ahern or others, or that Keenan would attempt to resist arrest or escape, "Ahern released his canine into the open driver's door of the vehicle, where the canine walked across the seat and bit Keenan in the face and arm repeatedly."   Id. ¶¶ 10-11.   Ahern then walked around to the passenger side of the vehicle, opened the passenger

---

[2] Though not stated in the Complaint, Plaintiff's opposition indicates that the vehicle was reported as stolen.   ECF No. 8, at 2.

door, and removed a now-conscious Keenan from the car, "with the canine still attached [to Keenan]." Id. ¶¶ 11-13. As a result of the encounter, Keenan sustained severe injuries and associated medical expenses. Id. ¶¶ 14, 16, 19.

On April 19, 2019, Keenan brought suit against Ahern in his individual capacity in the Virginia Beach Circuit Court, alleging excessive force under 42 U.S.C. § 1983 and battery under Virginia law. Defendant timely removed the action to this Court, ECF No. 1, and now moves to dismiss Plaintiff's § 1983 claim on the basis of qualified immunity, ECF No. 6. Should the Court dismiss such claim, Defendant further requests that the Court either dismiss Plaintiff's battery claim or remand it to the Virginia Beach Circuit Court. Id. Plaintiff filed an opposition to Defendant's motion, ECF No. 8, and Defendant filed a reply, ECF No. 9. The matter is therefore ripe for consideration.

## II. STANDARD OF REVIEW

The well-established Rule 12(b)(6) standard of review requires the dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

3

Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Nor does "an
unadorned, the-defendant-unlawfully-harmed-me accusation."
Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015)
(quoting Iqbal, 556 U.S. at 678).

A motion to dismiss tests the sufficiency of a complaint
without resolving factual disputes, and a district court "'must
accept as true all of the factual allegations contained in the
complaint' and 'draw all reasonable inferences in favor of the
plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery
County, 684 F.3d 462, 467 (4th Cir. 2012). Although the truth of
well-pled facts is presumed, a court is not bound by the "legal
conclusions drawn from the facts" and "need not accept as true
unwarranted inferences, unreasonable conclusions, or arguments."
E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175,
180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678. In addition,
"while it is generally not appropriate to consider the viability
of affirmative defenses at the Rule 12(b)(6) stage, in 'relatively
rare circumstances' where all of the facts 'necessary to the
affirmative defense clearly appear on the face of the complaint,'
an affirmative defense . . . may be resolved on a motion to
dismiss." Waites v. Wells Fargo Bank, N.A., No. 2:15cv353, 2016

WL 659084, at *2 (E.D. Va. Feb. 16, 2016) (quoting <u>Goodman v.</u>
<u>Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007)).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in
conjunction with Federal Rule of Civil Procedure 8(a)(2), which
requires only "a short and plain statement of the claim showing
that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),
so as to "give the defendant fair notice of what the . . . claim
is and the grounds upon which it rests," <u>Twombly</u>, 550 U.S. at 555
(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Fair notice
is provided by setting forth enough facts for the complaint to be
"plausible on its face" and "raise a right to relief above the
speculative level on the assumption that all the allegations in
the complaint are true (even if doubtful in fact)." <u>Id.</u> (citation
omitted).

### III. DISCUSSION

Title 42, section 1983 of the United States Code provides a
private cause of action to a plaintiff who has suffered a
deprivation of a constitutional or statutory right at the hands of
a state or local official or other person acting under color of
state law. <u>Perry-Bey v. City of Norfolk</u>, 678 F. Supp. 2d 348, 372
(E.D. Va. 2009).  Specifically, the statute provides, in relevant
part,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects
> . . . any citizen of the United States . . . to the

> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 "is not 'a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) (quoting Baker v. McCollan, 443 U.S. 137, 144 (1979)).

Here, Plaintiff alleges that Defendant used excessive force against him in violation of the Fourth Amendment's prohibition of unreasonable seizures. See Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006) (noting that the Fourth Amendment right to be free from unreasonable seizures "encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force"). In his Rule 12(b)(6) motion, Defendant argues that Plaintiff's excessive force claim should be dismissed because he is entitled to qualified immunity given that, regardless of any allegations suggesting a constitutional violation, Defendant's alleged conduct did not violate a "clearly established" constitutional right.[3] ECF No. 7, at 5.

---

[3] To be sure, Defendant does not concede that he committed a constitutional infraction, but simply argues for purposes of this motion that any violated constitutional right was not a "clearly established" right under then-existing controlling law. See ECF No. 7, at 5 ("Defendant denies any wrongdoing and specifically avers that his actions were at all times lawful and objectively reasonable.").

The doctrine of qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Meyers v. Baltimore County, 713 F.3d 723, 731 (4th Cir. 2013) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As explained by the Supreme Court, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Put simply, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

An official seeking to invoke the protections of qualified immunity "must demonstrate that (1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of its alleged violation." Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 395-96 (4th Cir. 2014) (alteration in original) (internal quotation marks omitted). "[C]ourts have

discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." al-Kidd, 563 U.S. at 735.  If a court finds that the law was "not clearly established," the court is not required to "reach the other step in the analysis—whether a constitutional violation actually occurred." Crouse v. Town of Moncks Corner, 848 F.3d 576, 584 (4th Cir. 2017).  Here, the thrust of Defendant's motion rests on the second prong—the right alleged to be violated was not "clearly established" at the time of the alleged violation.  As such, Defendant urges the Court to skip the first prong—whether there was a constitutional violation in the first instance—and focus on the second prong only.  In this case, however, the Court will exercise its discretion and briefly address the first prong before moving to the second.

### A. Violation of a Constitutional Right

It is well settled that excessive force claims arising in the context of a "'seizure' of a free citizen" are analyzed under Fourth Amendment principles. Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.  The Supreme Court has explained that a "seizure" occurs "when there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989) (emphasis omitted).  The parties do not dispute

8

that Plaintiff was "seized" within the meaning of the Fourth Amendment when, as alleged in the Complaint, Defendant deployed his canine partner against Plaintiff.  See Vathekan v. Prince George's County, 154 F.3d 173, 178-79 (4th Cir. 1998) (holding that a Fourth Amendment seizure occurred where an intentionally deployed police dog attacked a person whom the officer intended the dog to apprehend).  Thus, the issue is whether the seizure alleged was "unreasonable."  See id. at 178 ("An attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation." (emphasis added)).

Whether a seizure has been effectuated in an unreasonable manner is adjudged by an objective standard: whether the officer's actions are "'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation."  Graham, 490 U.S. at 397. In resolving this question, courts must devote "careful attention to the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight."  Id. at 396.  Courts must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 397.

Although Defendant does not directly challenge the sufficiency of Plaintiff's allegations as to a constitutional violation, upon an independent review of the Complaint, the Court has little difficulty concluding that the conduct alleged amounts to excessive force in violation of the Fourth Amendment. According to the Complaint, Ahern, accompanied by his canine partner and at least two other officers,[4] was confronted with a motionless and, even after multiple verbal commands, unresponsive man[5] sitting in the passenger seat of a parked vehicle with its driver's door open, after the individual who had previously occupied the driver's seat voluntarily surrendered to law enforcement. At no point prior to the attack did Keenan give any indication that he presented a danger to others or would attempt to escape. Under the facts

---

[4] Though it is uncertain the number of other officers that responded to the scene, and the exact moment they arrived, it is clear from the Complaint—or, at the very least, entirely reasonable to infer therefrom—that there were at least two other officers at the scene, see ECF No. 1-1 ¶ 10, and that such officers had arrived before Ahern engaged Keenan and the other individual, see id. ¶ 7.

[5] The Complaint also alleges that Plaintiff was "unconscious." ECF No. 1-1 ¶ 9. Defendant avers that "it is hard to fathom how [he] knew or could have recognized Plaintiff was 'unconscious' when his canine partner was released into the vehicle." ECF No. 7, at 8 n.2. Although it is true that there is no way to know at this stage whether Defendant in fact knew that Plaintiff was unconscious, given that Plaintiff—who could be seen through the open driver's door of the vehicle—remained motionless and unresponsive after repeated verbal commands, the Court is satisfied that, when the facts are interpreted in Plaintiff's favor, a reasonable officer "could have" recognized that Plaintiff was unconscious.

10

alleged, therefore, there is no suggestion that Ahern was "forced
to make [a] split-second judgment[]." Graham, 490 U.S. at 397.
Nonetheless, Ahern released his canine partner to apprehend
Keenan—a significant use of force, to be sure, see Maney v.
Garrison, 681 F. App'x 210, 220 (4th Cir. 2017) (unpublished);
Melgar ex rel. Melgar v. Greene, 593 F.3d 348, 362 (4th Cir. 2010)
(Michael, J., dissenting in part and concurring in part).  Even
when considering that Ahern initiated the encounter because the
vehicle Keenan occupied matched the description of one that had
been reported to police, deploying a police dog against Keenan
under the circumstances here alleged, which can hardly be described
as "tense, uncertain, [or] rapidly evolving," Graham, 490 U.S. at
397, was objectively unreasonable.  See Vathekan, 154 F.3d at 178.
As such, the Complaint sufficiently pleads a claim for Fourth
Amendment excessive force.

## B. Violation of a "Clearly Established" Constitutional Right

Having concluded that the Complaint sufficiently alleges a
Fourth Amendment violation, the Court must determine whether the
right violated was "clearly established" at the time of the
violation.   A clearly established right is one that is
"sufficiently clear [such] that every reasonable official would
[have understood] that what he is doing violates that right."
Reichle v. Howards, 566 U.S. 658, 664 (2012) (second alteration in
original) (internal quotation marks omitted).  Importantly, the

11

"clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (citation and internal quotation marks omitted); see also al-Kidd, 563 U.S. at 742 (stating that courts must not "define clearly established law at a high level of generality"). There need not be a case "directly on point" in order for an officer to know that his or her conduct violates a clearly established right, "but existing precedent must have placed the statutory or constitutional question beyond debate." Crouse, 848 F.3d at 583 (quoting al-Kidd, 563 U.S. at 741); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (citation omitted)).

In asserting the defense of qualified immunity, Defendant argues that there is no United States Supreme Court, Fourth Circuit, or Virginia Supreme Court case sufficiently similar to the facts presented here such that he should have known that his conduct violated clearly established law. In Defendant's view, the cases closest to being on point consist of the Fourth Circuit's decisions in Kopf v. Wing, 942 F.2d 265 (4th Cir. 1991), Vathekan,

154 F.3d 173, and Estate of Rodgers ex rel. Rodgers v. Smith, 188 F. App'x 175 (4th Cir. 2006) (unpublished).

In Kopf, the defendant officers tracked suspected armed bank robbers to an "extremely narrow" alley and released a police dog into the alley allegedly without warning to subdue the suspects. 942 F.2d at 266.  In reversing summary judgment for the defendants on the basis of qualified immunity, the Fourth Circuit indicated that the factual dispute as to whether the officers forewarned the suspects was "crucial, because a forewarning that the dog is going to attack, which provides the suspects a fair chance to surrender, is more reasonable than a surprise assault." Id. at 268.  The court also credited the affidavits of the plaintiffs' "well-credentialed experts on the use of canine units, both of whom were of the opinion that use of the dog when the suspects were surrounded was unreasonable, announcements notwithstanding." Id.

In Vathekan, the Fourth Circuit similarly reversed an award of summary judgment for the defendant police officer based on qualified immunity.  154 F.3d 173.  In that case, a police dog alerted to the presence of a human within a home that was the target of a suspected burglary.  Id. at 176.  Allegedly without warning, the officer released the dog into the home, resulting in severe injuries to the home's owner.  Id. at 176-77.  In rejecting the officer's claim of qualified immunity, the Fourth Circuit observed,

13

> In Kopf we held that the improper deployment of a police
> dog that mauls the target constitutes excessive force in
> violation of the Fourth Amendment.  Kopf was decided in
> 1991, four years before the attack on Vathekan.
> Accordingly, it was clearly established in 1995 that
> failing to give a verbal warning before deploying a
> police dog to seize someone is objectively unreasonable
> and a violation of the Fourth Amendment.

Id. at 179 (citation omitted).

Finally, in Rodgers, the Fourth Circuit, in an unpublished decision, upheld the district court's finding of qualified immunity.  188 F. App'x 175.  There, as police officers were attempting to subdue an armed suspect after a nearly-two-hour-long hot pursuit, the suspect "grasped his firearm," prompting an officer to cry out, "Gun!"  Id. at 177-78.  In response, another officer deployed a police dog without warning, which "engaged" the suspect's arm.  Id. at 178.  The suspect then aimed his firearm at one of the police officers, who, along with another officer, fired multiple shots, killing the suspect.  Id.  The estate of the deceased sued the officers, claiming, in part, that deployment of the police dog constituted excessive force because the deploying officer did not issue a prior warning.  Id. at 181.  In affirming the district court's qualified immunity finding, the Fourth Circuit found no Fourth Amendment violation, but it went on to state,

> Even if Officer Waters' deployment of the police dog
> without prior warning did violate the Fourth Amendment,
> the unlawfulness of his conduct was not clearly
> established on April 15, 2002.  Kopf and Vathekan stand

14

at most for the principle that the Fourth Amendment is
violated when an officer <u>who faces no immediate threat</u>
deploys a police dog without prior warning.  For the
reasons set forth above, that was not the case here.

<u>Id.</u> at 182.

According to Defendant, these cases clearly establish only
that a Fourth Amendment violation for excessive force occurs "when
an officer who <u>faces no immediate threat</u> deploys a police dog to
apprehend a suspect <u>without prior warning</u>."  ECF No. 7, at 7.
Consequently, Defendant argues, because the Complaint does not
allege that Defendant failed to give a prior warning, and because
there is no Fourth Circuit decision holding that it is a
constitutional violation for an officer to deploy a police dog in
circumstances similar to those presented here—that is, as
Defendant puts it, "the use of a police canine to intentionally
apprehend a suspect who remains motionless and provides no response
to repeated verbal commands to exit a vehicle that was the subject
of an earlier police report," <u>id.</u> at 8 (footnote omitted)—Plaintiff
does not properly allege a violation of clearly established law.

As established above, however, to find a violation of a
clearly established right, it is not necessary that the facts of
the case at hand align perfectly with those of relevant controlling
precedent, because "officials can still be on notice that their
conduct violates established law even in novel factual

circumstances."[6]  Hope, 536 U.S. at 741; accord Meyers 713 F.3d at 734 ("We repeatedly have held that it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity." (citing cases)). It is sufficient that pre-existing law gave the official "fair warning" that his conduct was unconstitutional.  Hope, 536 U.S. at 741.

The United States Supreme Court recently reaffirmed this principle last November in Taylor v. Riojas, 141 S. Ct. 52 (2020) (per curiam).  In that case, a Texas prison inmate was forced to endure "deplorably unsanitary conditions" in a prison cell for six days.  Id. at 53.  The Fifth Circuit found that such conduct violated the Eighth Amendment's prohibition of cruel and unusual punishment.  Id.  But, noting "ambiguity in the caselaw," the Fifth Circuit determined that the correctional officer defendants were entitled to qualified immunity because "[t]he law wasn't clearly established."  Id. at 53, 54 n.2 (alteration in original).  In a 7-1 decision, the Supreme Court reversed, finding that "no reasonable correctional officer could have concluded that [the alleged conduct] was constitutionally permissible."  Id.  In so holding, the Court reiterated that "a general constitutional rule

---

[6] Of course, "earlier cases involving 'fundamentally [or materially] similar' facts can provide especially strong support for a conclusion that the law is clearly established, [but] they are not necessary to such a finding."  Hope, 536 U.S. at 741.

already identified in the decisional law may apply with obvious clarity to the specific conduct in question."[7]    Id. at 53-54 (emphasis added) (quoting Hope, 536 U.S. at 741).  It is against this backdrop that the Court evaluates whether Defendant's conduct violated clearly established law.

At the outset, the Court notes that it is a violation of clearly established law in this circuit to employ excessive force "in the course of making an arrest or otherwise seizing a person." Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019) (citing cases); accord Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009). Moreover, the Fourth Circuit has specifically held that "the improper deployment of a police dog that mauls the target constitutes excessive force in violation of the Fourth Amendment."[8]

---

[7] Moreover, just last month, the Supreme Court vacated and remanded for further consideration in light of Taylor a separate Fifth Circuit ruling that granted qualified immunity (based on a lack of clearly established law) to a correctional officer that used pepper spray against an inmate without provocation.  See McCoy v. Alamu, No. 20-31, 2021 WL 666347, at *1 (Feb. 22, 2021), vacating 950 F.3d 226 (5th Cir. 2020).

[8] While Vathekan and Kopf involved situations in which the officers' failure to issue a warning before deploying a police dog rendered such deployment unreasonable under the Fourth Amendment, the Court does not read those cases as establishing the sole manner of conduct that constitutes improper deployment.  That is to say, "improper" deployment of a police dog amounting to a violation of clearly established law is not limited to those situations in which a police officer fails to provide a forewarning.  Indeed, one could easily imagine other scenarios in which, notwithstanding a prior warning, the deployment of a police dog would be entirely unreasonable and without question a violation of clearly established law as a reasonable officer would plainly know that such conduct is unlawful—even in "the absence of a judicial decision [so] holding," Meyers, 713 F.3d at 734.  Cf., e.g., Becker v. Elfreich, 821 F.3d 920, 928-29 (7th Cir. 2016) (holding that a police officer was not entitled to qualified immunity where he failed to call off a police dog that was mauling a "nonresisting (or at most passively

<u>Vathekan</u>, 154 F.3d at 179 (emphasis added) (citing <u>Kopf</u>, 942 F.2d at 268); <u>see also</u> <u>id.</u> at 178 ("An attack by an <u>unreasonably</u> deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation." (emphasis added)).  This Court has already determined that, under the facts alleged, the deployment of the police dog here was improper.  The relevant question, therefore, is whether it was <u>apparent from pre-existing law</u> that such deployment was improper.  <u>Anderson</u>, 483 U.S. at 640.  The Court answers that question in the affirmative and holds that a reasonable officer would have known that the deployment of a police dog under the circumstances alleged in the Complaint constituted excessive force in violation of the Fourth Amendment.

Critically, the Fourth Circuit has held on more than one occasion that the use of serious or violent force (<u>i.e.</u>, disproportionate force) in arresting or otherwise seizing an individual that has surrendered, is not actively resisting or attempting to flee, does not present a danger to others, or is effectively secured amounts to a constitutional violation.  For

---

resisting) suspect" even though there was no relevant caselaw directly on point); <u>Alicea v. Thomas</u>, 815 F.3d 283, 291-92 (7th Cir. 2016) (holding that "[c]ommanding a dog to attack a suspect who is already complying with orders" "violates clearly established law," despite the absence of closely analogous precedent).  Consequently, while the Complaint does not allege that Defendant failed to give a prior warning, such fact is not determinative in a case where, as here, the plaintiff alleges facts suggesting that the officer (accompanied by multiple backup officers) could see that the intended target was motionless and unresponsive, which would render any issued warnings ineffective.

example, in Meyers, the court observed that "[t]he use of any
unnecessary, gratuitous, and disproportionate force, whether
arising from a gun, a baton, a taser, or other weapon, precludes
an officer from receiving qualified immunity if the subject is
unarmed and secured." 713 F.3d at 735 (internal quotation marks
omitted) (citing cases). More recently, the Fourth Circuit held
in Yates v. Terry that an officer was not entitled to qualified
immunity where the officer tased an unarmed and compliant suspect
three times, and the evidence did not "support an inference that
[the suspect] was a danger to [the officer] at any time" or was
actively resisting, even when considering that the suspect "was
not handcuffed." 817 F.3d 877, 885-88 (4th Cir. 2016). The court
reiterated that, under its precedent, "a nonviolent misdemeanant
who is compliant, is not actively resisting arrest, and poses no
threat to the safety of the officer or others should not be
subjected to 'unnecessary, gratuitous, and disproportionate
force.'" Id. at 888 (quoting Meyers, 713 F.3d at 735). And in
Smith v. Ray, the court reversed a district court's finding of
qualified immunity for an officer that, despite having no reason
to believe that the suspect was armed or "was at all inclined to
cause him any harm," grabbed the compliant and non-aggressive
suspect, forced her to the ground, and—after punching her multiple
times—handcuffed her. 781 F.3d 95, 98-99, 102 (4th Cir. 2015).
Although the defendant in Smith attempted to "draw fine

19

distinctions" between the factual circumstances of that case and a similar case previously decided, Rowland v. Perry, 41 F.3d 167 (4th Cir. 1994), the Fourth Circuit stated clearly,

> [O]ur determination that the officer was not entitled to qualified immunity in Rowland was not based on any case that was factually on all fours. Rather, it was based on the simple fact that the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively attempted to defend himself.

Smith, 781 F.3d at 104.

Although the above cases are not on "all fours" with the present case, the Court is satisfied that the principles clearly espoused by the Fourth Circuit in such cases gave Defendant more than "fair warning" that his conduct, under the circumstances presented, was unlawful. Again, as alleged in the Complaint, Plaintiff and another individual were in a parked vehicle with the driver's door open. Defendant was accompanied by at least two other officers and a canine. Obeying Defendant's command, the individual in the driver's seat of the vehicle voluntarily surrendered and was taken into custody seemingly without incident. Plaintiff, however, was—at the very least—motionless and unresponsive in the passenger seat. Even after multiple verbal commands, Plaintiff's condition did not change, which Defendant plainly observed through the open driver's door. Aside from the fact that the vehicle matched the description of one that had been

20

earlier reported to police, there were no facts suggesting either that Plaintiff presented a danger to Defendant or others, or that he would attempt to escape or resist arrest.  Nor does it appear that there were any other circumstances requiring police to act with urgency.  Despite all that, Defendant deployed his canine partner to <u>attack</u> Plaintiff, who regained consciousness <u>while being mauled</u> and suffered severe resultant injuries.

In light of the clearly established principles set forth above, it is "beyond debate," <u>al-Kidd</u>, 563 U.S. at 741, that a reasonable officer would have known that deploying a police dog against Plaintiff under such circumstances was constitutionally impermissible.  In the end, such a conclusion is rather unremarkable as deploying a police dog against a motionless, unresponsive, and outnumbered individual, who, in his physical state, has given police virtually no cause to suspect that he poses a risk of injury to others or will attempt to flee, cannot seriously be characterized as a permissive "bad guess[] in [a] gray area[]," <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992), as Defendant posits.[9]

---

[9] Though this Court "need not look any further than [the Fourth Circuit] decisions" discussed above, the Court notes that "a consensus of cases of persuasive authority from <u>other jurisdictions</u>" also provides fair warning that the conduct alleged in this case is violative of the Constitution. <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 538-39 (4th Cir. 2017) (internal quotation marks omitted); <u>see, e.g.</u>, <u>Alicea</u>, 815 F.3d at 289-90 (reversing summary judgment award for defendant officer on the basis of qualified immunity where the officer deployed a police dog against a suspect that "was

Defendant is, of course, free to assert the defense of qualified immunity again at the summary judgment stage with the benefit of a more fully developed evidentiary record.  See Raub v. Bowen, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013).  But at this stage, such defense must be rejected as the Complaint sufficiently alleges a violation of a clearly established right.  See Ray v. Roane, 948 F.3d 222, 227-30 (4th Cir. 2020) (reversing a district court's finding of qualified immunity at the Rule 12(b)(6) stage where the district court failed to accept as true the facts alleged in the complaint).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss and associated consent motion for a hearing are **DENIED.**  ECF Nos. 6, 10.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

---

not in active flight at the time he was discovered," but was "standing still, arms raised, inside of an empty above-ground pool, surrounded by five foot walls," and complied with the officer's orders); Campbell v. City of Springboro, 700 F.3d 779, 787 (6th Cir. 2012) (finding a constitutional violation where police officers deployed a police dog to apprehend a suspect that had given police no indication that he presented a danger to others, and was not actively resisting but "lying face down with his arms at his side"); Priester v. City of Riviera Beach, 208 F.3d 919, 923-24 (11th Cir. 2000) (holding that a constitutional violation occurred where a police officer ordered his canine partner to attack a suspect that had previously surrendered and complied with the police officer's order to lie on the ground).  Again, while these and other similar cases are not indistinguishable in every respect from the case at hand, the principles set forth in those cases clearly establish that, in the absence of any exigent circumstances, deploying a police dog against a motionless, unresponsive, and outnumbered individual amounts to excessive force.

**IT IS SO ORDERED.**

_____
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March ___8___, 2021